ATLEE ELECTRIC COMPANY, INC., Plaintiff-Appellee, *v.* JOHNSON CONSTRUCTION CO. *et al.,* Defendants-Appellants.

(No. 57203;

First District (1st Division)—September 24, 1973.

Michael C. Zissman, of Chicago, for appellants.

Norman Wexler, of Wexler & Wexler, of Chicago, for appellee.

Mr. JUSTICE GOLDBERG delivered the opinion of the court:

Atlee Electric Company, Inc. (plaintiff) filed suit for the foreclosure of a mechanic's lien upon certain real estate. After trial by the court, a judgment for foreclosure of the lien and sale of the property was entered. Johnson Construction Co., Howard Western Industries, Inc., Howard Savings & Loan Association, Howard-Northfield Building Development Corp. and Gustav A. Prodromos (defendants) appeal.

Defendants urge that the judgment appealed from should be reversed for failure of plaintiff to join another lien claimant as a party defendant; the trial court erred in taking judicial notice of foreclosure of another mechanic's lien claim and in denying defendants the right to a continuance for amendment of their pleadings. Defendants also urge that the judgment is contrary to the evidence in that the trial court improperly included certain extras and the amount of certain labor and material; inconsistencies between plaintiff's claim for lien, complaint and proof are fatal, and the evidence is insufficient to support the judgment so that the judgment was arbitrary and capricious. Plaintiff responds that the point regarding alleged failure to join a necessary party is without legal foundation; the trial court properly took judicial notice of sworn pleadings in other proceedings; the trial court did not abuse discretion in denying a continuance; plaintiff met the burden of proof regarding extras; monies expended by plaintiff for labor and materials were properly proved; there is no inconsistency between plaintiff's claim for lien and its complaint; and, finally, since the judgment is not clearly against the manifest weight of the evidence, it should be affirmed.

We will first state the general factual background and we will later supplement this statement as required for decision of the various points raised. On February 27, 1970, Johnson Construction Company (Johnson Co.), one of the defendants, entered into a written contract with plaintiff. Johnson Co. was the general contractor for remodeling of improved real estate at 1321 West Howard Street, in Evanston, so that plaintiff was a subcontractor. The contract provided that plaintiff was to furnish

and install various electric apparatus complete with wiring for a stated price of $20,517. The allegation in plaintiff's complaint that, as regards this contract, Johnson Co. served as nominee and agent of the owner of the property is admitted by defendants.

Plaintiff entered into the premises and commenced performance. On May 21, 1970, another written agreement was entered into between plaintiff and Johnson Co. for additional electrical work for a stated price of $2080. The first agreement provided that an initial payment was to be made to plaintiff upon commencement of performance with 85% of the balance to be paid as the work progressed and final balance to be paid upon completion. The second agreement provided for payment of 85% of the contract price according to progress with balance upon completion.

It is plaintiff's general theory that the work progressed in due course but that defendants failed to pay plaintiff in accordance with progress. It is the theory of defendants that plaintiff failed to pursue the work diligently and that defendants, although ready, willing and able to pay, were not legally obligated to do so. It is agreed, however, that plaintiff stopped performance on August 12, 1970, and withdrew from the job. Thereafter, defendants entered into a contract with another firm, Amber Electric Construction Corp. (Amber Co.), to complete the electrical work.

■■ The property is registered under the provisions of "An Act concerning land titles" generally referred to as the Torrens Act. (Ill. Rev. Stat. 1971, ch. 30, pars. 45 *et seq.*) Therefore, service of notice of subcontractor's lien upon the owner was unnecessary. (Ill. Rev. Stat. 1971, ch. 82, par. 24.) Plaintiff registered its initial claim for lien on October 16, 1970 and another claim on December 4, 1970.

Defendants' first point bears upon the statutory requirement that plaintiff in a mechanic's lien foreclosure "* * * shall make all parties interested, of whose interest he is notified or has knowledge, parties defendant * * *. Parties in interest within the meaning of this act, shall include persons entitled to liens thereunder whose claims are not, as well as are, due at the time of the commencement of suit * * * also all persons who may have any legal or equitable claim to the whole or any part of the premises." (Ill. Rev. Stat. 1971, ch. 82, par. 11.) Defendants interpret this as a mandatory requirement of the statute. They reason from this premise that since the record shows that Amber Co. had instituted a suit for foreclosure of a mechanic's lien against defendants' property, it was a necessary party so that the judgment appealed from should thus be reversed. However, certain additional facts must be supplied from this record before this simplistic reasoning can be accepted.

■■ Plaintiff's complaint contains no allegation regarding Amber Co. Plaintiff conceded in its brief in this court that it was aware that Amber Co. intended to take over the job after plaintiff abandoned it. However, plaintiff contends, and this assertion is borne out by the record, that there is no evidence before us that Amber Co. was a party in interest within the meaning of the statute. There is no evidence that Amber Co. furnished any labor or materials under its contract; and no evidence that any monies remained due and unpaid to Amber Co. The record shows only that at one point one of the defendants, Gustav A. Prodromos, testified, "I paid Amber." This could be construed to mean that Amber Co. had been paid and therefore had no lien. Immediately after this, counsel for plaintiff asked the court to take judicial notice of "a pending lawsuit" brought by Amber Co. against certain of defendants to which defendants objected.

■■ Furthermore, there is no showing here that Amber Co. ever registered a claim for lien against the property in the office of the Registrar of Titles of Cook County. Such registration would generally be a mandatory condition precedent to creation of any interest in the registered property by a lien claimant. (Ill. Rev. Stat. 1971, ch. 30, par. 126. See also 31 I.L.P. 328, § 10 under Registration of Land Titles.) Thus, the record does not show whether Amber Co. in fact has any "legal or equitable claim" against the premises which would make it a necessary party.

■■ It follows that there was no legal requirement in the case at bar for plaintiff to add Amber Co. as a party. We cannot agree with the contention of defendants that the trial court should have consolidated the proceedings brought by Amber Co. with the case at bar *sua sponte* as soon as counsel for plaintiff showed the court a copy of the complaint filed by Amber Co. The authorities cited by defendants in this regard are inapplicable. (*Granquist v. Western Tube Co.*, 240 Ill. 132, 88 N.E.2d 468; *Malkov Lumber Co. v. Serafine Builders, Inc.*, 1 Ill.App.3d 543, 273 N.E.2d 654; *Rochelle Bldg. Co. v. Oak Pk. Tr. & Sav. Bank*, 121 Ill.App. 2d 274, 257 N.E.2d 542.) All of these cases are dramatically different from the case at bar in their factual structure. We will, however, note that in *Bingaman v. Dahm*, 307 Ill.App. 432, 30 N.E.2d 509, cited by plaintiff, the court pointed out that one purpose of the applicable statute was to prevent harassment of the owner with a multiplicity of suits for lien which would increase costs and expenses. Defendants, here, presumably having full knowledge of the facts concerning the claim of Amber Co., whatever such facts were, have apparently waived this right, if it ever existed, by failing to move for consolidation. The court in *Bingaman* also pointed out that a court review " * * * will not dismiss or remand simply because of nonjoinder of necessary parties,

unless it appears that the decree will have the effect of depriving an omitted party of his property rights (*Crescio v. Crescio*, 365 Ill. 393), or, as stated in the *Granquist* case, of unnecessarily burdening an owner of property with a multiplicity of suits in a mechanic's lien case." 307 Ill. App. at 438, 439.

■■ *Bingaman* is more analogous to the case at bar than any other case here cited. There, the court considered actual lien claimants who were not made parties to the proceedings but their claims had become "* * * unenforceable at the time objection was first raised by defendants." (307 Ill.App. at 439.) Quite similarly, in the case at bar, the record does not disclose that Amber Co. had any interest in the premises in accordance with the requirement of the applicable statute. In addition, in oral argument it appeared that any problems which may have existed between defendants and Amber Co. have now been settled.

Defendants next urge reversal because of prejudicial attempts by counsel for plaintiff to impeach defendant Gustav A. Prodromos. During cross-examination of this defendant, counsel for plaintiff asked the court to take judicial notice of the fact that there was a "pending lawsuit" against certain of the defendants by Amber Co. Defendants' theory is that this created a prejudicial atmosphere in the mind of the court. Defendants then argue that it was incumbent upon plaintiff, having commenced an attempt at impeachment, to complete it. Apparently defendants are attempting to rely here upon the general rule that, where a foundation for impeachment has been laid on a material issue, failure to offer proof of prior inconsistent statements by the witness is extremely prejudicial. *Ramseyer v. Illinois Central R.R.*, 110 Ill.App.2d 95, 98, 249 N.E.2d 120.

The trial record here fails to create a factual situation requiring application of this legal theory. We find no prejudice resulting from this cross-examination. One of the defendants testified that he had paid Amber Co. but the trial court sustained an objection to this question made by defendant's own lawyer. There was no jury and we fail to find even the slightest degree of prejudice to defendants from this entire matter.

■■■ Defendants next urge that the court erred in denying their motion for continuance made on the date that the cause was called for trial. Counsel for defendants told the court that more time was required to bring in an absent witness from Florida and also for further investigation to enable the filing of an amended answer setting up affirmative defenses pertaining to complete waivers of lien. It is true, as a matter of abstract legal theory, that the Civil Practice Act provides for amendments on just and reasonable terms at any time before final judg-

ment. (Ill. Rev. Stat. 1971, ch. 110, par. 46(1).) Also, the Mechanics' Lien Act of Illinois provides for the making of amendments to any part of the pleadings. (Ill. Rev. Stat. 1971, ch. 82, par. 12.) This right to amend is a matter within the discretion of the court which should be liberally exercised (*Adler v. Northern Illinois Gas Co.*, 57 Ill.App.2d 210, 219, 220, 206 N.E.2d 816) to further the ends of justice. (*Bowman v. County of Lake*, 29 Ill.2d 268, 281, 193 N.E.2d 833.) However, in the case at bar, defendants' theory appears solely from a general statement of its counsel concerning "complete waivers of liens." No proposed amendment to defendants' answer was ever presented to the court although the trial lasted several days. Under these circumstances, we are obliged to assume that the action of the court was within the proper bounds of discretion. *Austin Liquor Mart, Inc. v. Department of Revenue*, 51 Ill.2d 1, 8, 280 N.E.2d 437. See also *Zamouski v. Gerrard*, 1 Ill. App.3d 890, 898, 275 N.E.2d 429.

As regards the absent witness, the rights of the parties are governed by Rule 231(a) of the Supreme Court. (Ill. Rev. Stat. 1971, ch. 110A, par. 231(a).) There was no compliance with this rule by defendants. No affidavit was submitted to the trial court in accordance with the rule. Thus, there was no abuse of discretion in denying the continuance. (*People ex rel. Bucaro v. Johnson*, 8 Ill.App.3d 618, 622, 291 N.E.2d 9.) In addition, this argument by defendants is rendered nugatory by the fact that the witness in question actually appeared at the trial and testified in their behalf.

■■ Defendants next contend that the trial court erred in allowing a recovery by plaintiff for extras. Both of the agreements between plaintiff and Johnson Co. provided specifically that all extra work would be performed only upon written orders. Defendants cite a number of authorities but rely most heavily upon *Watson Lumber Co. v. Guennewig*, 79 Ill.App.2d 377, 389, 390, 226 N.E.2d 270, as establishing the requirements which must be met by a contractor to permit recovery for "extras." However, this authority also establishes the general principle that this condition of the contract may be the subject of an oral waiver by the owner. In *Watson Lumber Co.* the court clearly stated this proposition and also held that "* * * the waiver of such a provision must be proved by clear and convincing evidence * * *." 79 Ill.App.2d at 396.

■■ In the case at bar, there is evidence that five tickets representing extra work were signed by Harry Johnson sole proprietor of Johnson Co., the original contractor. In other instances, oral permission to do extra work was given by Johnson or by defendant Gustav A. Prodromos. There is also testimony in the record that defendants demanded some of the extra work and even threatened nonpayment to plaintiff unless certain of

these extras were performed. The record is ample in this regard to establish waiver of this contract provision.

In addition, this record does not reflect the amount of any allowance against defendants for extras. Plaintiff's complaint claimed a balance due of $11,164.25, including extras. However, the final judgment found a balance due in the lesser sum of $7483.14. Therefore, the record as prepared and filed by defendants as appellants fails to show the amount for allegedly unauthorized extra work allowed against them.

This same defect is apparent in defendants' next contention that various charges for labor were allowed plaintiff. This argument revolves about a daily labor record book which the court received in evidence. An employee of plaintiff testified that she noted where labor employees of plaintiff were assigned on a schedule given her by the person in charge. On the following morning, it was her usual custom to ascertain personally from the employee the number of hours he had spent at the location and then to record it in the labor book which she kept. Defendants attack this record on the ground that it does not indicate precisely what work was done and whether the employee was working in connection with the main contract or an extra. This argument necessarily fails because the record in question was intended only as a record of time spent. It did not purport to be a record of the exact type of work which any particular employee did upon any particular day. The bookkeeper was able to examine this record kept directly by her and then, upon reviewing a summary sheet, to testify as to the number of man-hours reflected and the total cost for this labor to plaintiff.

In our opinion, this record was competent evidence. It was made as a memorandum by plaintiff of occurrences and events which took place day-by-day over a period of time. The memoranda were all entered in the regular course of the business of plaintiff and pursuant to the duties of the person who made the memoranda. Supreme Court Rule 236(a) operates to make writings of this type competent evidence. (Ill. Rev. Stat. 1971, ch. 110A, par. 236(a).) In addition, the only objection made to the memorandum and to the method of proof was that the exhibit was not the best evidence of labor performed at the job. As stated above, the exhibit was neither prepared nor offered for that purpose. It was merely intended to show the number of hours as disclosed by plaintiff's records. The statement of these specific grounds by counsel for defendants operated as a waiver of all other reasons for his objection. (*Bear v. Holiday Inns of America*, 1 Ill.App.3d 786, 788, 275 N.E.2d 457; *E. A. Meyer Construction Co. v. Drobnick*, 49 Ill.App.2d 51, 53, 199 N.E.2d 447.) We also note that plaintiff produced, and the bookkeeper identified, payroll check stubs representing wages actually paid to all

of the employees during the period in question. *Scully v. Morrison Hotel Corp.*, 118 Ill.App.2d 254, 254 N.E.2d 852, cited by defendants, is inapplicable. That case deals with the rejection by Illinois of the so-called "English rule" applied in some American jurisdictions to permit introduction of an otherwise incompetent exhibit demanded and inspected by the opposing party in the presence of the jury. The proof in this regard was competent and ample to sustain the judgment.

As regards the general contentions of defendants concerning incompetency and impropriety of evidence, this record shows that the judgment appealed from is supported by sufficient evidence which was both competent and proper. Therefore, we are obliged to presume "* * * that in reaching its decision the trial court considered only the evidence which was properly admitted (*McFail v. Braden*, 19 Ill.2d 108), and this record presents the appropriate basis for the application of the presumption." *Reese v. Melahn*, 53 Ill.2d 508, 512, 292 N.E.2d 375.

The next contention of defendants is concerned with alleged inconsistencies between the claim for lien, plaintiff's complaint and proof of facts. Defendants contend that this situation discloses fraud which should completely prevent recovery by plaintiff. The pertinent statute provides for the filing or registration of claims for mechanics' liens. It includes the following language (Ill. Rev. Stat. 1971, ch. 82, par. 7):

> "No such lien shall be defeated to the proper amount thereof because of an error or overcharging on the part of any person claiming a lien therefor under this Act, unless it shall be shown that such error or overcharge is made with intent to defraud; * * *."

In the case at bar, on October 16, 1970, plaintiff registered a claim for lien against the subject property in the amount of $9994.70. Appended to the verified claim as an exhibit was a statement showing the contract price, including both agreements, also showing cost of performance bond and extras in the amount of $2626.25. The statement also reflected that the cost of completing the entire contract was $3389.55.

On December 4, 1970, plaintiff registered another claim for lien in the amount of $11,164.25. However, this claim reduced the reasonable cost of completion of both contracts to $2220. This merely brought the claim for lien into arithmetic uniformity with plaintiff's complaint.

In urging that the record here discloses the type of fraud which would justify us in denying plaintiff's claim for lien, defendants cite and rely upon *Marsh v. Mick*, 159 Ill.App. 399. That case in turn cites *Christian v. Allee*, 104 Ill.App. 177. We find both of these authorities cited and distinguished in the later case of *Glencoe State Bank v. Cole*, 265 Ill.App. 158. The court, there, pointed out that in *Christian* and *Marsh*, "* * * the respective claimants were found, from the evidence in the case, to

have offered false and perjured testimony in support of their claims, and that it was deliberately and willfully made in order to prejudice interested parties and their liens were denied upon that ground and not upon the ground that the lien notice or the pleadings were in error." 265 Ill.App. at 166.

In other words, the courts of Illinois have held that errors or overcharging by lien claimants will not defeat their claim for lien absent clear intent to defraud. This principle is in complete accord with the language of the statute above cited and is another corollary to the generally accepted and wise legal principle that fraud is never presumed but must be the subject of clear and convincing proof. (*Turzynski v. Libert*, 122 Ill.App.2d 352, 359, 259 N.E.2d 295, citing *Bundesen v. Lewis*, 368 Ill. 623, 632, 15 N.E.2d 520.) We find no intent to defraud from this record.

■■ We reject defendants' contention that plaintiff's claim should be defeated because it failed to introduce in evidence copies of the claims for lien registered in the Torrens Office. The filing of these claims was admitted by the answer of defendants. Copies thereof were appended to plaintiff's complaint and no question is raised regarding the accuracy thereof. Under these circumstances, it was unnecessary to introduce the documents themselves. Ill. Rev. Stat. 1971, ch. 110, par. 36; *Lipschultz v. So-Jess Management Corp.*, 89 Ill.App.2d 192, 199, 232 N.E.2d 485.

The final contention of defendants is directed to the proof concerning the percentage of the contract which plaintiff had actually performed. It will be recalled that the two contracts total $22,597; plaintiff claimed extras in the amount of $2626.25; plaintiff received on account the sum of $12,044.17 and the court allowed plaintiff total recovery of $7483.14, exclusive of interest and costs. Computation shows that this amount allowed by the court is approximately 85% of the total contract price exclusive of extras. Plaintiff's theory is that the work was 85% completed.

Defendants offered the testimony of three witnesses in this regard. Richard Duff, a registered engineer retained by plaintiff, was familiar with the property and had designed the heating, ventilating and air-conditioning systems. He expressed the opinion that plaintiff had only completed some 45% of the work. Allan Friedman and Martin Silvers, both electrical contractors and apparently competitors, had separately examined the property as prospective bidders to complete the job. Friedman's testimony showed the contracts about 17% performed by plaintiff. Silvers' testimony showed the contracts about 21% performed. Despite the fact that the entire issue is one of opinion concerning which reasonable minds might well differ, the disparity is indeed amazing. Doubt may be cast

upon the testimony of the rival bidders in view of their interest in the situation. Additional doubt can be cast upon all three of the versions expressed in behalf of defendants because they actually paid plaintiff some $12,000 which would be in excess of 50% of the total price of both contracts without extras. Yet no counterclaim was filed by defendants for overpayment or damages. Ill. Rev. Stat. 1971, ch. 82, par. 13.

In situations of this type, presenting a factual or evidentiary attack upon a judgment by an appellant in a reviewing court, we are obliged to solve the dilemma by the manifest weight rule. There is ample evidence in this record to furnish substantial support of the result reached by the trial court in computation of the amount due plaintiff. We cannot say that the result is manifestly against the weight of the evidence, and, therefore, we will not disturb the judgment order except for necessary modification as hereinafter shown which is affirmatively required by the record. *Reese v. Melahn*, 53 Ill.2d 508, 512, 513, 292 N.E.2d 375, citing *Schulenburg v. Signatrol, Inc.*, 37 Ill.2d 352, 226 N.E. 2d 624.

Defendants also contend that they are entitled to a credit in the amount of $525 for lighting fixtures which were never purchased by plaintiff or installed. The original contract provided that plaintiff would supply such fixtures to a cost of $525. Despite careful and laborious examination of the entire record, we cannot find specifically that this amount was actually included by the court in computing the sums due plaintiff. We must, therefore, reject this contention since the burden rested upon defendants as appellants to demonstrate wherein the result reached by the trial court was contrary to the evidence or to the law.

■■ The doctrine of extending all reasonable presumptions in favor of a judgment or order appealed from is basic in Illinois law. This principle has been succinctly stated in 2 I.L.P. 627, § 711 of "Appeal and Error":

> "It is well-settled law in Illinois that on appeal all reasonable presumptions are in favor of the judgment, order, decree or ruling appealed from, that until the contrary is shown the action of the lower court will be presumed correct and in accordance with the law and the facts presented to it, and that error will never be presumed. In the absence of a showing to the contrary, the reviewing court will indulge every reasonable presumption in favor of the regularity of the proceedings below.
>
> It is neither the function nor the province of the reviewing court to search the record for errors, although it may search the record for grounds of affirmance, and the party alleging error must

overcome the presumption of regularity and show affirmatively by the record the error alleged."

Defendants are, however, correct as a matter of law in their contention that the trial court erroneously included in the amount due plaintiff $205.17 for the cost of a performance bond. The record affirmatively shows that the court included this item in computing the amount due plaintiff. Since this sum was not a charge for material or labor, it is not recoverable by plaintiff in these statutory proceedings. *Prepakt Concrete Co. v. Fidelity & Deposit Co. of Maryland* (7th Cir. 1968), 393 F.2d 187.

The judgment appealed from is accordingly modified by deducting from the principal balance due plaintiff the sum of $205.17 representing bond premium; thus leaving a principal balance due in the amount of $7277.97. This will necessarily modify the next item in the judgment representing interest at 5% per annum from September 9, 1970 to November 24, 1971 (one year, two months and 15 days) at the rate of 5% per annum, originally (and erroneously) fixed in the judgment as $436.45 to the correct amount of $439.65. Thus the judgment order will reflect total principal and interest due as of November 24, 1971 in the amount of $7717.62. To this must be added costs as itemized in the judgment in the amount of $174.91 which will necessarily correct the total amount due to $7892.53. As thus modified, the judgment is affirmed.

Judgment affirmed as modified.

BURKE, P. J., and EGAN, J., concur